UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

IKIA JOHNSON,

                        PLAINTIFF,

              -AGAINST-

NEW YORK CITY AND POLICE OFFICER
JOSEPH VILLALTA, individually, and in his
capacity as a member of the New York City Police
Department.

                     DEFENDANTS.

**DECLARATION OF DUNCAN PETERSON IN SUPPORT OF MOTION FOR ATTORNEYS' FEES & COSTS**

11- CV-06176 (ENV)(CLP)

-------------------------------------------------------------------X

**DUNCAN PETERSON** declares, pursuant to 28 U.S.C. 1746 as follows:

1. I, along with Justin Delle Cave, represent Plaintiff Ikia Johnson ("Ms. Johnson") in the above-captioned action. I am familiar with the facts and circumstances concerning the prosecution of this action, and I submit this declaration in support of Plaintiff's application, pursuant to 42 U.S.C. 1988 and Federal Rules of Civil precluded 54(d), for an Order awarding Plaintiff attorneys' fees and costs as the prevailing party in this litigation.

### THE LAW OFFICES OF PETERSON DELLE CAVE LLP

2. Peterson Delle Cave LLP was founded by Duncan Peterson and Justin Delle Cave in August 2009, and maintains offices in the Woolworth Building at 233 Broadway, Suite 1800, New York, NY 10279.

## DUNCAN PETERSON'S BACKGROUND & ATTORNEY EXPERIENCE

3. I graduated from the University of Strathclyde, Glasgow, Scotland, in 1992[1] with a Bachelors Degree with Upper Second Class Honors; New York University with a Masters Degree with Distinction (Perfect G.P.A. 4:00) in 1997; and a Juris Doctorate from Brooklyn Law School in 2005, where I was awarded special academic merit scholarships, and where I was appointed President of the Moot Court Honor Society.

4. In 2005, I passed the New York and New Jersey Bar Examinations, respectively.

5. In 2006, I passed the California Bar Examination, however, I only practice in New York State, where I am admitted to practice in the Federal Courts for the Southern and Eastern Districts of New York ("SDNY" and "EDNY").

6. In 2005, I was appointed Assistant Corporation Counsel to New York City.

7. I began working in the General Litigation Division, which handles major cases challenging important New York City programs and policies in areas such as constitutional rights, including Section 1983 cases involving New York City Police Department ("NYPD") and the Department of Corrections ("DOC").

8. In 2006, I was awarded the prestigious New York City Law Department Rookie of the Year Award.

9. During my four years at the Law Department from 2005-2009, I worked on approximately one hundred Federal and State actions, including many high profile cases and class actions. My work responsibilities ran the gamut and included everything from the drafting of an Answer to serving as trial counsel.

---

[1] From 1992 – 2002, I had a successful career in publishing and advertising and was co-owner of The Campus Agency & Bulldog Group. The Campus Agency & Bulldog Group was involved in award-winning advertising campaigns and published more than ten magazines, including the largest student magazines in both the United States and Canada; Student Advantage Inc. acquired The Campus Agency & Bulldog Group prior to its IPO on Nasdaq.

10. In 2009, Justin Delle Cave and I founded Peterson Delle Cave LLP, which has filed more than one hundred Section 1983 cases involving NYPD, the vast majority of which include claims of *inter alia* false arrest, malicious prosecution, and excessive force.

11. I have been lead counsel in eighty seven (87) cases in the EDNY and SDNY.

12. I was trial counsel in *Todd Brown v New York City et al*: 10-CV-04675 (EDNY) in a Section 1983 case against NYPD.

13. The jury returned a verdict in favor of plaintiff, who was awarded both compensatory and punitive damages.

14. I was trial counsel in *Michael Spero v NYC et al* 11-CV-04850, which resulted in a verdict for the defendants.

15. I have also litigated numerous commercial and real estate cases for both plaintiffs and defendants, respectively, in New York State Supreme Court. See *Giannasca v. Lind*, 11011-2011(Queens County)(Won on Motion to Dismiss); *Gaster v Jacobs*, 100484-2011(New York County) (Settled); *Russo v Solomon*, 603659-2013 (Nassau County) (Settled for Full Payment of Monies Owed).

16. I have gained a considerable amount of experience since the beginning of 2013, specifically, in work on Section 1983 actions against NYPD.

17. In 2013, I commenced seven new Section 1983 actions against NYPD in EDNY, involving claims, *inter alia,* of false arrest, malicious prosecution, and denial of right to a fair trial. In the same period I concluded nine similar type actions in EDNY. See *List of Cases in EDNY & SDNY listing Duncan Peterson as Attorney of Record*, attached as Exhibit A.

18. The work I performed on all of these cases ranged from drafting complaints to motion practice and settlements.

19. In 2013, I commenced eight new actions against NYPD in SDNY, involving claims, *inter alia,* of false arrest, malicious prosecution, and denial of right to a fair trial. In the same period I concluded six similar type actions in SDNY. Id.

20. Again, the work I performed in these actions ran the gamut from the commencement of

the action to serving as trial counsel.

21. Notably, I was trial counsel and lead attorney in *Faulk v City of Yonkers*, 12-CV-5120 (SDNY) (involving allegations of excessive force and improper search).

22. The City of Yonkers adopted a tough stance on settlement during litigation - similar to the City of New York's position in the instant case - and as a result the case went to trial at the end of October 2013.

23. The jury returned a verdict in favor of Mr. Faulk, who was awarded both compensatory and punitive damages.  As the prevailing party, plaintiff was entitled to attorneys' fees and costs.  While there was no application to the Court, as it was settled in advance, my agreed-upon reasonable hourly rate was $450.00.

24. In 2013, I successfully obtained a judgment for $238,000.00 in *Brown Lloyd James v. Gerson Global Strategic Advisers*, before the American Arbitration Association.  I subsequently obtained a judgment for same in New York State Supreme Court, *Brown Lloyd James v. Gerson Global Strategic Advisers*: 650262-2013.

25. My hourly rate in that case was $500.00, which is my hourly rate for fee-paying clients.

26.  My request in the current case for an hourly rate of $350.00 is in line with a partner in a small law firm with five years of experience.

## JUSTIN DELLE CAVE'S BACKGROUND & ATTORNEY EXPERIENCE

27. Mr. Delle Cave graduated *cum laude* with a B.A. in education from Brooklyn College in 1999.

28. Mr. Delle Cave then spent three years teaching in underprivileged areas in New York and London, before entering the legal profession.

29. Mr. Delle Cave attended Brooklyn Law School on an academic scholarship.

30. Mr. Delle Cave graduated *cum laude* from Brooklyn Law School in 2005, where he served as the Vice President of the Moot Court Honor Society, and received multiple awards and accolades for academics, **including a Cali Award for the highest grade in Conflict of Laws taught by the late Honorable Judge Trager of the Eastern District**

**of New York,** and trial advocacy.

31. In 2005, Mr. Delle Cave passed the New York Bar examination.

32. Mr. Delle Cave began his legal career in the Manhattan District Attorney's office under Robert M. Morgenthau.

33. As an Assistant District Attorney in the prestigious Trial Bureau 50, Mr. Delle Cave prosecuted hundreds of criminal cases, including both felonies and misdmeanors from inception to trial, ranging from large-scale white-collar investigations highlighted in the media, to DWIs and drug cases.

34. During Mr. Delle Cave's first three years at the Manhattan District Attorney's office, he served as lead trial counsel in more than twenty cases, which was more trials than any other Assistant District Attorney who began at the Manhattan District Attorney's office in 2005.

35. Prior to co-founding Peterson Delle Cave LLP, Mr. Delle Cave worked as an associate in a boutique civil law firm, specializing in securing multimillion-dollar verdicts on behalf of those injured by multinational companies.

36. As a partner in Peterson Delle Cave LLP, Mr. Delle Cave has been lead counsel in almost 30 cases in the EDNY and SDNY, including co-trial counsel in *Michael Spero v NYC et al* 11-CV-04850.

37. Mr. Delle Cave has also litigated more than one hundred criminal defense cases throughout all New York City boroughs, as well as commercial and real estate cases, respectively.

38. Mr. Delle Cave's hourly rate for fee-paying clients is $500.00 per hour.

39. During 2013, Mr. Delle Cave commenced five new Section 1983 actions in Federal Court in the EDNY and concluded nine similar type actions. See *List of Cases Listing Mr. Delle Cave in EDNY & SDNY as Lead Attorney* attached as Exhibit B.

40. In the same period, Mr. Delle Cave commenced four cases and concluded seven similar cases in the SDNY, including a six-figure settlement. Id.

41. In addition, during the same period, Mr. Delle Cave was criminal defense attorney in two criminal trials in New York , both of which resulted in acquittals for his client.

## MALCOLM ANDERSON'S LEGAL BACKGROUND & EXPERIENCE

42. Mr. Anderson is a fully qualified lawyer in Scotland, having graduated from Edinburgh University in 2007.

43. Mr. Anderson went on to train with one of Scotland's largest and most prestigious law firms, Brodies LLP, before leaving Scotland to move to New York in 2010.

44. Mr. Anderson joined Peterson Delle Cave LLP in September 2010.

45. In February 2014, Mr. Anderson passed the New York Bar Examination and was admitted as an attorney in New York in September 2014.

46. Mr. Anderson was awarded an hourly rate of $100.00 for his paralegal work in the case of *Hassan v. New York City et al*. 11-CV-05382, EDNY, which was a rate agreed upon by the City of New York.

## PETERSON DELLE CAVE LLP'S SECTION 1983 PRACTICE

47. Mr. Delle Cave and I represent clients in Section 1983 Civil Rights cases who can only afford to retain an attorney on a contingency basis .  We do not receive an initial retainer.

48. We are compensated based upon a percentage of any settlement or judgment, and through 1983 fee awards.

49. Peterson Delle Cave LLP bears all the costs of litigation while the case is pending.

50. NYPD civil rights cases are extremely risky and involve a "vastly complex area of federal law…[which] is ever changing"  according to New York City Law Department's web site.

51. Mr. Delle Cave and I are **<u>EXTREMELY</u>** careful about which clients we represent, and we consistently turn down more clients than we accept.

52. Our stringent client selection is based upon whether we believe the client's version of events 100%. We only take cases where, in our legal opinion after considerable discussion and analysis of the evidence, the NYPD and/or DOC are fully liable.

53. Our approach is based on the fact that "we were both on other side", meaning than I defended Section 1983 cases against NYPD whilst employed as an Assistant Corporation Counsel for New York City Law Department, and Mr. Delle Cave was a prosecutor as an Assistant District Attorney for the Manhattan DA office.

54. As a result, Mr. Delle Cave and I bring a certain realism (some might term it cynicism) to the evaluation of any case.

55. Mr. Delle Cave and I question the client at length prior to making a decision on representation and, when possible, we make a visit to the location of the incident.

56. Mr. Delle Cave and I then discuss the merits of the case and how the litigation might play out.

57. As a result of our methodical and strict approach, Peterson Delle Cave LLP has only received two "no pay" positions from the New York City Law Department: we lost *Michael Spero v New York City et al.*, 11-CV-04850 (EDNY) at trial (ironically, Ben Kuruvilla was defendants' trial counsel) and *Steven Santiago v. New York City et al.*, 13-CV-01643 (EDNY) is currently trial ready before Judge Amon.

58. Mr. Delle Cave and I, and other civil rights attorneys, rely on the "lodestar" recovery system when we prevail.  See *Perdue v. Kenny A*, 45  U.S. , 130 S.Ct 1662 (2010).

**INCIDENT: PO VILLALTA, A MALE POLICE OFFICER, TOUCHES MS. JOHNSON ON THE VAGINA, DESPITE BEING REPEATEDLY INFORMED THAT SHE IS A FEMALE, THEN PUNCHES HER IN THE EYE WHEN SHE OBJECTS**

59. Ms. Johnson is a 22-year-old African American female.

60.  On or about March 26, 2011, Ms. Johnson was attending a barbeque at the home of her cousin, Mr. Devon Williams, which is located on Beach 32nd Street, Far Rockaway, New

York.

61. At approximately 1:30 am on March 27, 2011, Ms. Johnson was inside a car in front of her cousin's home with family friends.

62. NYPD officers, including PO Villalta, approached the car.

63. PO Villalta approached Ms. Johnson and told her that she would be searched.

64. Ms. Johnson requested that she only be searched by a female police officer.

65. PO Villalta refused Ms. Johnson's request and accused her of being a male.

66. Ms. Johnson was upset and embarrassed by PO Villalta's accusations.

67. Several members of her family informed PO Villalta that Ms. Johnson was female.

68. Ms. Johnson repeated her demand to be searched by a female police officer.

69. In response, and without warning, PO Villalta grabbed Ms. Johnson by the vagina.

70. Ms. Johnson objected to PO Villalta's grabbing of her vagina.

71. Without justification, PO Villalta punched Ms. Johnson in her eye.

72. PO Villalta then arrested Ms. Johnson without legal justification or probable cause.

73. At approximately 2:00 am on March 27, 2011, Ms. Johnson was taken to the 101st Precinct.

74. Ms. Johnson was then taken to a hospital, however she was not examined and only given an ice pack.

75. At approximately 11:00 am on March 27, 2011, Ms. Johnson was arraigned on charges including *inter alia* resisitng arrest.

76. Ms. Johnson's case was adjourned in contemplation of dismissal.

77. After leaving Queens Criminal Court, Ms. Johnson went to Hospital.

78. All charges against Ms. Johnson were subsequently dismissed.

## MS. JOHNSON FILES A SECTION 1983 COMPLAINT IN EDNY AGAINST MEMBERS OF NYPD

79. Plaintiff Ikia Johnson commenced this action on December 20, 2011, by filing a complaint in the EDNY.

## THE CASE IS LITIGATED FOR THREE YEARS AS A RESULT OF THE CITY'S CONSISTENT FAILURE TO MEET DEADLINES, FAILURE TO RESPOND TO DISCOVERY REQUESTS, AND REFUSAL TO PROPERLY ADDRESS SETTLEMENT UNTIL AFTER THE JOINT PRE-TRIAL ORDER IS FILED AND A DATE FOR TRIAL SET

INVESTIGATION

80. The core allegation in this case is extremely disturbing: that a much larger male Police Officer grabbed a small female in the vagina, then punched her in the face when she objected to this outrageous violation. Mr. Delle Cave and I, therefore, spent a lot of time at the start of the action investigating Plaintiff's version of events.

81. The first of three City attorneys to work on the case was Dara Weiss, to whom I granted the courtesy of an adjournment for extension of the time for the City to serve a response, based on her representation that the City needed to undergo a similar process to the one outlined by Peterson Delle Cave LLP above, prior to filing an Answer.

APRIL, 2012: AT THE INITIAL CONFERENCE, SETTLEMENT IS ENCOURAGED

82. In April 2012, at the initial conference, it was recommended that parties engage in early settlement discussions given the shocking nature of the allegations, and that parties exchange fact discovery before a settlement conference.

83. A settlement conference was set for June 2012.

84. We served initial disclosures and discovery requests in April 2012, as well as Plaintiff's

9

first Amended Complaint, naming PO Villata as one of the John Does.

85. Defendants failed to both serve its own set of serve discovery requests and respond to plaintiff's discovery requests. As a result, I made several phone calls to the City attorney, Porsha Johnson, and left messages demanding same before the settlement conference.

86. Ms. Porsha Johnson failed to respond to any of my voice mails, so I sent a letter demanding a response.

JUNE, 2012: AT THE SETTLEMENT CONFERENCE THE CITY MAKES A 'LOW BALL' OFFER & THEIR FAILURE TO PROVIDE DISCOVERY IS RAISED

87. The City provided a "low ball" settlement offer and sought more medical records in advance of depositions to address the issue of whether Plaintiff suffered a fractured orbital socket.

88. The issue of Defendants' failure to provide timely discovery responses was raised.

89. Following the conference, medical records were obtained and depositions of Plaintiff and defendant PO Villalta were conducted in September 2012.

90. The depositions raised issues of identification (ie. which defendant did what, and which witnesses were where) and discovery disputes over Plaintiff's prior arrests as a juvenile.

91. Also, other issues arose regarding Plaintiff's transcript (which the City failed to provide to Plaintiff), filing an Amended complaint, and further discovery requests.

92. However, again, the City failed to respond to calls and emails to address these matters.

OCTOBER, 2012: AT THE COMPLIANCE CONFERENCE THE CITY REINFORCES ITS SETTLEMENT POSTION, PROMISES TO MEET ITS DISCOVERY OBLIGATIONS, AND LIMITS THE CITY'S INQUIRIES INTO PLAINTIFF'S ARREST HISTORY AS A JUVENILE

93. The City reinforced its position on settlement and that it wished to proceed with discovery.

94. The City's failure to timely respond to discovery requests was addressed along with a verbal order limiting the City's inquiry into Plaintiff's interactions with NYPD as a juvenile.

95. A second Amended Complaint was served and filed.

96. We served further discovery requests and attempted to schedule non-party depositions, but Ms. Porsha Johnson persistently failed to respond to emails, phone calls or letters.

ON NOVEMBER 30, 2012 A THIRD CITY ATTORNEY, BEN KURUVILLA, SERVES A NOTICE OF APPEARANCE

97. I spoke with the new City attorney, Ben Kuruvilla, about the case, and bluntly stated that "Ms. Porsha Johnson fell asleep at the wheel" and that she greatly hindered the litigation of this case.

98. I further explained Plaintiff's position and what had happened with regards to settlement discussions.

DECEMBER, 2012: AT THE COURT CONFERENCE THE NEW CITY ATTORNEY PROMISES TO MOVE DISCOVERY ALONG AND ADDRESS SETTLEMENT

99. Ben Kuruvilla attended and stated that he is now the attorney responsible for the case and will "get up to speed" on the case and "address settlement".

100. However, the City failed to increase its initial "low ball" settlement offer, and the only movement is the deposition of one non-party.

101. The City finally responded to Plaintiff's outstanding discovery requests, which were served in November 2012, just one week prior to the conference in March 2013.

MARCH, 2013: AT THE COURT CONFERENCE, THE CITY MAINTAINS ITS SETTLEMENT POSITION, BUT REQUESTS MORE TIME FOR DISCOVERY TO BE COMPLETED, INCLUDING A DEPOSITION OF A DOCTOR

102.	At the settlement conference in March, there was no movement from the City's original settlement offer, and Defendants were ordered to depose the Doctor within 45 days. **However, the City subsequently failed to depose the Doctor in violation of this Court's Order.**

JULY, 2013: AT THE COURT CONFERENCE THE CITY STATES THEY ARE MOVING TOWARDS TRIAL, BUT AGAIN REQUEST ADDITIONAL DISCOVERY

103.	At the Conference in July, 2013, the City takes a 'hard line' position on settlement and unequivocally states that the City is committed to moving towards trial.

104.	However, the City also requests discovery.

105.	Accordingly, a Joint Pre-Trial Order schedule is set.

AUGUST, 2013: THE PARTIES PREPARE AND FILE A JOINT PRE-TRIAL ORDER

106.	Mr. Delle Cave and I read Judge Eric N. Vitaliano's Indivual Motion Practice and Rules.  See *Judge Eric N. Vitaliano's Indivual Motion Practice and Rules*, attached as Exhbit C.

107.	Mr. Delle Cave and I drafted and prepare the Joint Pre-Trial Order.

108.	Mr. Delle Cave and I continue to prepare for trial and assist Defendants with their outstanding discovery requests in order to avoid further delay.

JANUARY, 2014:  A DATE FOR THE PRETRIAL CONFERENCE IS SET

109.	Mr. Delle Cave and I move into 'trial mode' and start to prepare for trial.

110.	One week before the pre-trial conference, the City served a Rule 68 Offer of Judgment and the case settles. See *Offer of Judgment*, attached as Exhibit D.   The Offer was considerably higher than the previous global offer, which the City had consistently insisted would not be increasing.

111. Following the acceptance of the Rule 68 Offer of Judgment, I attempted to settle the attorneys' fees application.

112. However, after several months the City was unwilling to pay reasonable attorneys' fees.


JULY, 2014: AT THE COURT CONFERENCE, REQUESTED BY PLAINTIFF, A MOTION SCHEDULE IS SET TO RESOLVE THE ISSUE OF REASONABLE ATTORNEYS' FEES & COSTS FOR PLAINTIFF

113. Accordingly, I prepared a Motion for Reaonsable Attorneys' Fees & Costs. See *Attorneys' Fees & Costs in Johnson v. City of New York et al*, attached as Exhibit E

Dated: September 22, 2014

/s/
Duncan Peterson