UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IKIA JOHNSON,

                                                                    Plaintiff,

                    -against-

THE CITY OF NEW YORK, ET AL.,

                                                                    Defendants.

---

**DEFENDANTS THE CITY OF NEW YORK AND
JOSEPH VILLALTA'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR ATTORNEY'S FEES AND COSTS**

---

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Ben Kuruvilla*
*Tel: (212) 356-3513*
*Matter No. 2011-044597*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

PRELIMINARY STATEMENT .......................................................................... 1

PROCEDURAL HISTORY.................................................................................. 2

ARGUMENT

    POINT I

        THE REQUESTED HOURLY RATES ARE
        UNREASONABLE. .............................................................3

    POINT II

        THE AMOUNT OF HOURS EXPENDED BY
        PLAINTIFF'S COUNSEL ARE GROSSLY
        EXCESSIVE AND MUST BE REDUCED. ...........................8

        A.   The Hours Spent of the JPTO Were
            Excessive..................................................................... 9

        B.   The Case Was Not Heavily Litigated .......................... 10

        C.   Any Excessive Hours Expended in this Case
            Were Solety Due to Plaintiff........................................ 13

        D.   Specific Examples of Gross Overbilling...................... 14

        E.   An Across-the-Board Cut is Required ......................... 17

        F.   Counsel's Bill Should be Reduced by Even
            More Than in the Hassan Case .................................... 19

    POINT III

        THE AMOUNT OF HOURS EXPENDED BY
        PLAINTIFF'S COUNSEL MUST BE REDUCED
        IN LIGHT OF THE LACK OF SUCCESS
        PLAINTIFF OBTAINED. ..................................................20

    POINT IV

        FEES IN CONNECTION WITH THE INSTANT
        APPLICATION SHOULD NOT BE AWARDED. ..............................22

CONCLUSION..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Pages**

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany
   County Bd. of Elections,
     522 F.3d 182 (2d Cir. 2008).................................................................................... 3, 4

Barfield v. New York City Health and Hosps. Corp.,
     537 F.3d 132 (2d Cir. 2008).................................................................................. 3, 21

Blue v. Finest Guard Services, Inc.,
     No. 09 Civ. 133 (ARR), 2010 U.S. Dist. LEXIS 73223 (E.D.N.Y. Jun. 24, 2010)................... 6

Blum v. Stenson,
     465 U.S. 886 (1984)............................................................................................. 4

Builders Bank v. Rockaway Equities, LLC,
     No. 08 Civ. 3575 (MDG), 2011 U.S. Dist. LEXIS 107409 (E.D.N.Y. Sept. 23, 2011).......... 18

Chambless v. Masters, Mates & Pilots Pension Plan,
     885 F.2d 1053 (2d Cir. N.Y. 1989)........................................................................... 7

DiFilippo v. Morizio,
     759 F.2d 231 (2d Cir. 1985)................................................................................... 8

Duverger v. C & C Duplicators, Inc.,
   No. 08 Civ. 0721 (DRH) (ARL),
   2009 U.S. Dist. LEXIS 53859 (E.D.N.Y. June 25, 2009) ........................................... 7

Farrar v. Hobby,
     506 U.S. 103 (1992)........................................................................................... 21

Faulk v. City of Yonkers,
     12-cv-5120 (SDNY)............................................................................................. 5

Gagne v. Maher,
   594 F.3d 336 (2d Cir. 1979),
   aff'd on other grounds, 448 U.S. 122 (1980) ....................................................... 23

Gierlinger v. Gleason,
     160 F.3d 858 (2d Cir. 1998).................................................................................. 4

Green v. City of New York,
     403 Fed. Appx. 626 (2d Cir. 2010)........................................................................ 17

**Statutes**                                                                      **Pages**

Hassan v. City of New York,
    No. 11-cv-5382 (JBW) (VMS), 2014 U.S. Dist. LEXIS 26194 (E.D.N.Y Feb. 10,
    2014) ....................................................................................................... 3, 5, 19, 20, 22

Hensley v. Eckerhart,
    461 U.S. 424 (U.S. 1983)............................................................................................ 8

Hugee v. Kimso Apts., LLC,
    852 F. Supp. 2d 281 (E.D.N.Y. 2012) ...................................................................... 6

Imbeault v. Rick's Cabaret Int'l Inc.,
    No. 08 Civ. 5458, 2009 U.S. Dist. LEXIS 71562 (S.D.N.Y. Aug. 13, 2009) ........... 4

Kassim v. City of Schenectady,
    415 F.3d 246 (2d Cir. 2005)..................................................................................... 21

Kirsch v. Fleet Street, Ltd.,
    148 F.3d 149 (2d. Cir. 1988)................................................................................. 9, 18

Long v. City of New York,
    No. 09 Civ. 699 (AKH), 2010 U.S. Dist. LEXIS 81020 (S.D.N.Y. August 6, 2010) ....... 22, 23

Luca v. County of Nassau,
    698 F. Supp. 2d 296 (E.D.N.Y. 2010) ...................................................................... 6

Lunday v. City of Albany,
    42 F.3d 131 (2d Cir. 1994)........................................................................................ 8

Manzo v. Sovereign Motor Cars, Ltd.,
    No. 08 Civ. 1229 (JG) (SMG),
    2010 U.S. Dist. LEXIS 46036 (E.D.N.Y. May 11, 2010) ....................................... 18

Mawere v. Citco Fund Services,
    No. 09 Civ. 1342 (BSJ) (DF),
    2011 U.S. Dist. LEXIS 14911 (S.D.N.Y. Sept. 16, 2011)................................. 22, 23

Melnick v. Press,
    No. 06 Civ. 6686 (JFB) (ARL),
    2009 U.S. Dist. LEXIS 77609 (E.D.N.Y. Aug. 28, 2009)....................................... 7

Millea v. Metro-North R.R. Co.,
    658 F.3d 154 (2d Cir. 2011)................................................................................. 18, 21

Missouri v. Jenkins,
    491 U.S. 274 (1989)................................................................................................... 4

**Statutes**                                                                                              **Pages**

Moran v. Sasso,
 No. 05 Civ. 4716 (DRH) (ETB),
 2009 U.S. Dist. LEXIS 56381 (E.D.N.Y. July 2, 2009) ............................................................ 7

New York State Ass'n for Retarded Children, Inc. v. Carey,
 711 F.2d 1136 (2d Cir. 1983)............................................................................... 8, 17

Quaratino v. Tiffany & Co.,
 166 F.3d 422 (2d Cir. 1999) ................................................................................. 8

Raza v. City of New York.,
 No. 11 Civ 3448 (PKC)(JMA), 2013 U.S. Dist. LEXIS 166820 (E.D.N.Y.Nov. 22,
 2013 ............................................................................................................... 19

Rosado v. City of New York.,
 No. 13 Civ. 4285 (SAS), 2012 U.S. Dist. LEXIS 35249 (S.D.N.Y.Mar 15, 2012)................. 23

Simmons v. New York City Transit Auth.,
 575 F.3d 170 (2d Cir. 2009)............................................................................... 4

Small v. New York City Transit Auth.,
 03 Civ. 2139 (SLT) (MDG), 2014 U.S. Dist. LEXIS 39582 (E.D.N.Y. Mar. 25, 2014) ........ 18

Spence v. Ellis,
 No. 07 Civ. 5209 (TPC) (ARL),
 2012 U.S. Dist. LEXIS 18676 (E.D.N.Y. Dec. 19, 2012) ........................................... 6

T.S. Haulers, Inc. v. Cardinale,
 No. 09 Civ. 451 (SJF) (ARL), 2011 U.S. Dist. LEXIS 9578 (E.D.N.Y. Jan. 31, 2011) ........... 5

Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. Dist.,
 71 F.3d 1053 (2d Cir. 1995)................................................................................. 23

Whitney v. JetBlue Airways Corp.,
 No. 07 Civ. 1397 (CBA) (CLP), 2009 U.S. Dist. LEXIS 118323 ............................................ 7

Wong v. Young Yoo,
 No. 04 Civ. 4569 (JBW) (ALC),
 2010 U.S. Dist. LEXIS 111142 (E.D.N.Y. Oct. 19, 2010) ....................................................... 7

**Statutes**

42 U.S.C. § 1983 .................................................................................................... 1, 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x

IKIA JOHNSON,

       Plaintiff,

 -against-

THE CITY OF NEW YORK, ET AL.,

       Defendants.

------------------------------------------------------- x

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES AND
COSTS**

11 CV 6176 (ENV)(CLP)

## PRELIMINARY STATEMENT

    Plaintiff commenced this action on December 20, 2011 alleging a violation of her

civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleged two causes of action in her complaint.

Specifically, she alleged that she was falsely arrested and subjected to excessive force during the

course of her arrest on March 26, 2011. Plaintiff ultimately named one individual defendant in

this action, Police Officer Joseph Villalta. Although the City was named as a defendant in the

case caption, there was no claim made against the City under either a municipal liability theory

or *respondeat superior* theory. A total of two party depositions and one non-party deposition

were taken in this matter. Altogether, the three depositions were completed in about 6 ½ hours.

Two of the depositions took only about 1 ½ hours each to complete. Defendants produced a total

of 41 pages of documents in this case during the entire litigation. Plaintiff produced no

documents in this case other than signing releases provided by defendants and producing

photographs of herself and the scene of the incident. There was no motion practice. The parties

never appeared for a final pre-trial conference before the trial judge, a joint pre-trial order was

never finalized by the Court and no trial date was ever set in this matter. Plaintiff accepted

defendants' Rule 68 Offer of Judgment on January 27, 2014.

Plaintiff has now submitted an application for attorney's fees alleging that 193 attorney and paralegal hours were expended in this case for a total of $65,800 and seeking $1299.10 in costs, for a total requested bill of $67,099.10. It is defendant's position that attorneys' fees and costs should be commensurable to the lack of legal and factual complexity of the case and that the grossly excessive and redundant hours sought here be reduced significantly.

## PROCEDURAL HISTORY

On or about December 20, 2011, plaintiff filed a complaint against the City of New York. See Docket Sheet, Document No. 1. On March 19, 2012, the City filed an answer. On April 11, 2012, an initial conference was held. On April 18, 2012, the complaint was amended to add Police Officer Joseph Villalta and defendants answered on May 2, 2012. The parties attended a settlement conference on June 26, 2012 where the matter did not settle. The parties completed the two party depositions in this matter on September 5, 2012 and September 7, 2012, respectively. The parties attended status conferences on October 24, 2012 and December 17, 2012. The parties completed a non-party deposition, the third and final deposition in the case, on January 28, 2013. The parties attended status conferences on March 27, 2013 and September 17, 2013. The parties filed a proposed joint pre-trial order on September 27, 2013. No activity occurred on the docket after September 27, 2013 until the Court posted a Notice of Conference on January 6, 2014, indicating that a conference was scheduled before Judge Eric Vitaliano on January 28, 2014. Defendants served a Rule 68 Offer of Judgment on January 22, 2014. Plaintiff accepted the Rule 68 Offer of Judgment on January 27, 2014.

## ARGUMENT

### POINT I

### THE REQUESTED HOURLY RATES ARE UNREASONABLE.

In their memorandum of law in support of their motion for attorneys' fees and costs, plaintiff's counsel seek a rate of $350 per hour for Mr. Peterson and Mr. Dellecave. Defendant respectfully submits that the rate sought by plaintiff's counsel is higher than those awarded to attorneys with similar levels of experience practicing in the Eastern District of New York. Further, defendants direct the Court's attention to the case of Hassan v. New York City, No. 11-CV-5382 (JBW) (VMS), 2014 U.S. Dist. LEXIS 26194 (E.D.N.Y. Feb. 10, 2014) (Report and Recommendation, adopted by the Honorable Jack B. Weinstein, on February 27, 2014). In that case, on February 10, 2014, only about two weeks after plaintiff accepted a Rule 68 Offer of Judgment in this case, Magistrate Judge Scanlon found that Mr. Peterson and Mr. Dellecave should be awarded a rate of $325 per hour. There is no basis for this Court to award a higher amount than was awarded to counsel just earlier this year. In fact, defendants submit that in light of the non-complex and straightforward nature of the claims in this litigation, and in light of the blatantly excessive hours requested below, the requested hourly rate should be lower than was awarded in Hassan. Defendants, therefore, respectfully request that the Court reduce both Mr. Peterson's and Mr. Dellecave's requested rate to $300 per hour.

District courts are afforded considerable discretion in determining the amount of attorneys' fees in any given case. Barfield v. New York City Health and Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008). In calculating a reasonable fee award, the Second Circuit has adopted the "presumptively reasonable fee" approach. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008). "Although the term 'lodestar' is now disfavored by the Second Circuit, the applicable approach still contemplates (1) a consideration of the number of hours actually spent by counsel and other personnel that are deemed reasonably necessary to a successful outcome for the client,

and (2) the setting of reasonable hourly rates for counsel . . . ." Imbeault v. Rick's Cabaret Int'l Inc., No. 08 Civ. 5458, 2009 U.S. Dist. LEXIS 71562, at *1 (S.D.N.Y. Aug. 13, 2009) ("In determining a 'reasonable' fee, the 'most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" (quotation omitted). "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks and citation omitted).

"The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill, 522 F.3d at 190. In determining the reasonable hourly rates to be applied, courts should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, (1984)). Moreover, the "presumptively reasonable fee" standard uses the hourly rates employed in the district in which the reviewing court sits, unless the party seeking fees "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Simmons, 575 at 174-75 (internal quotation omitted). To compensate for the delay in payment, the hourly rates to be used should be "'current rather than historic hourly rates.'" Gierlinger, 160 F.3d at 882 (quoting Missouri v. Jenkins, 491 U.S. 274, 284 (1989)).

Based on the applicable case law, defendant submits that the hourly rate sought by Mr. Peterson and Mr. Dellecave is unreasonable. Mr. Peterson argues that he should be awarded the sum of $350.00 per hour based upon his "considerable amount of experience", specifically

"in his work on Section 1983 actions against NYPD involving claims for false arrest, malicious prosecution and excessive force." See Pl.'s Memorandum of Law in Support of His Motion for Attorneys' Fees and Costs ("Pl.'s Memo"), p. 6. Mr. Peterson was admitted as an attorney in New York in 2005. See Declaration of Mr. Peterson at ¶¶ 4-6. Mr. Peterson cites to his work in Faulk v. City of Yonkers, 12 –cv-5120 (SDNY) as a basis to award him the rate of $350. See Pl Memo at p. 7. Plaintiff claims that his agreed-to rate in that case was $450 per hour, but cites to no support for this claim and notes that there was no application made to the Court in that case. Id. Accordingly, no Court has ever awarded Mr. Peterson a $450 per hour rate. Moreover, the case Mr. Peterson cites was venued in the Southern district, where rates tend to be higher. Further, as noted above, just this past February, Mr. Peterson was awarded a rate of $325 in the Eastern District in the Hassan case.

Likewise, Mr. Dellecave argues that he should also be awarded the rate of $350 per hour. See Pl. Memo at p. 7. Mr. Dellecave was admitted as an attorney in 2006. He also cites to his "considerable amount of experience", specifically "in his work on Section 1983 actions against NYPD involving claims for false arrest, malicious prosecution and excessive force." See Pl.'s Memo at p. 8. As with Mr. Peterson, Mr. Dellecave was awarded a rate of $325 per hour in the Hassan case just in February of 2014. There is no justification for an increase of this amount only a few months later.

Both Mr. Peterson's and Mr. Dellecave's requested rate of $350 per hour is excessive and not supported by law. "Recent prevailing hourly rates in the Eastern District are: (1) between two hundred ($200.00) to four hundred dollars ($400.00) for partners." T.S. Haulers, Inc. v. Cardinale, No. 09 Civ. 451 (SJF) (ARL), 2011 U.S. Dist. LEXIS 9578, at *9 (E.D.N.Y. Jan. 31, 2011) (citations omitted). In deciding the hourly fee of a partner-level

attorney, "[t]he court may consider the size of the firm, as large firms tend to charge higher hourly rates than small firms." Spence v. Ellis, No. 07 Civ. 5209 (TPC) (ARL), 2012 U.S. Dist. LEXIS 18676, at *16 (E.D.N.Y. Dec. 19, 2012) (citations and quotations omitted). "The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their field." Hugee v. Kimso Apts., LLC, 852 F. Supp. 2d 281, 299 (E.D.N.Y. 2012) (citation omitted); see also Luca v. County of Nassau, 698 F. Supp. 2d 296, 301 (E.D.N.Y. 2010) (concluding that $400 per hour award reasonable rate to partner with over 25 years of experience "specializing in plaintiffs-side civil rights cases" whose "peers recognized him as an authority in his specialty, as evidenced by his numerous teaching and speaking engagements," and who has handled approximately 180 civil rights cases in the Eastern District alone).

Based on the foregoing case law, Mr. Peterson's and Mr. Dellecave's requested rate of $350 per hour is unreasonable and not supported by law. Neither attorney has cited to any case where a court has awarded them the rate of $350 per hour. They are the only principals of a small firm with no other admitted attorneys employed. Both attorneys have fewer than 10 years of experience and have only been operating their small firm since 2009. Based on the prevailing case law, their relative experience, the small size of their law firm, the district in which this case is brought, and the fact that there is no evidence proffered by either Mr. Peterson or Dellecave that their peers recognize them as experts in civil rights law (such as teaching and speaking engagements), defendants respectfully submits that a rate of $300 per hour is appropriate. See e.g. Blue v. Finest Guard Services, Inc., No. 09 Civ. 133 (ARR), 2010 U.S. Dist. LEXIS 73223, at *15 (E.D.N.Y. Jun. 24, 2010) (awarding $325/hr. to an attorney with

twenty years of experience); <u>Whitney v. JetBlue Airways Corp.</u>, No. 07 Civ. 1397 (CBA) (CLP), 2009 U.S. Dist. LEXIS 118323, at *7 (listing cases and approving an hourly rate of $350 for an attorney with 28 years of experience as a partner in a relatively small firm, consisting of between 15 and 20 lawyers who had been seeking a $450 hourly rate); <u>Melnick v. Press</u>, No. 06 Civ. 6686 (JFB) (ARL), 2009 U.S. Dist. LEXIS 77609, at *9 (E.D.N.Y. Aug. 28, 2009) (noting market rates of between $200 and $375 for partners and between $100 and $295 for associates); <u>Moran v. Sasso</u>, No. 05 Civ. 4716 (DRH) (ETB), 2009 U.S. Dist. LEXIS 56381, at *4 (E.D.N.Y. July 2, 2009) (noting rates of $200 to $350 for partners and $200 to $250 for senior associates); <u>Duverger v. C & C Duplicators, Inc.</u>, No. 08 Civ. 0721 (DRH) (ARL), 2009 U.S. Dist. LEXIS 53859, at *2 (E.D.N.Y. June 25, 2009) (listing market rates as between $200 and $350 for partners, and $200 and $250 for senior associates); <u>Wong v. Young Yoo</u>, No. 04 Civ. 4569 (JBW) (ALC), 2010 U.S. Dist. LEXIS 111142 (E.D.N.Y. Oct. 19, 2010) (awarding attorney with over 30 years of experience, dedicating most of his practice to civil rights cases, a rate of $375 and declining to adopt proposed rate of $400 per hour).

Moreover, since plaintiff's counsel are the principals of a law firm with no members other than themselves and a paralegal, their overhead and fixed costs are presumably much less than that of law firm partners along with whom they seek to be considered as an equal for the purposes of establishing their hourly rate. <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058 (2d Cir. N.Y. 1989) (noting that courts do not need to assign the same rate to every law firm in the district because billing rates for attorneys at larger firms are generally higher than rates for attorneys at smaller firms).

In sum, Mr. Peterson and Mr. Dellecave cannot point to any case law in this district where an attorney of reasonably comparable skill, experience, and reputation was

awarded $350 per hour, especially considering the simplicity of this case as well as the limited amount of success obtained (which will be discussed further below). In addition, as will be detailed further below, the amount of hours plaintiff's counsel claim here are grossly excessive and exorbitant. The case was not document intensive and was not heavily litigated. The Court has discretion to consider these factors in arriving at an appropriate rate. Moreover, plaintiff's counsel have chosen to ignore the multitude of recent cases in this district where attorneys with substantially more experience than them, and who have achieved more success in litigating matters that were in some cases far more complex were awarded the same or less per hour than the rate they sought. Accordingly, defendants respectfully submit that Mr. Peterson and Mr. Dellecave should be awarded $300 per hour.

## POINT II

### THE AMOUNT OF HOURS EXPENDED BY PLAINTIFF'S COUNSEL IS GROSSLY EXCESSIVE AND MUST BE REDUCED.

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the calculation. Hensley v. Eckerhart, 461 U.S. 424, 434 (U.S. 1983); Lunday, 42 F.3d at 133. Thus, the court should exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). A court has broad discretion to "trim the fat" in an

application for attorneys' fees, and to eliminate excessive or duplicative hours. <u>See</u>, <u>e.g.</u>, <u>Kirsch v. Fleet Street, Ltd.</u>, 148 F.3d 149, 173 (2d. Cir. 1988); <u>Carey</u>, 711 F.2d at 1146-47.

### A. The Hours Spent on the JPTO Were Excessive.

Based on the prevailing case law, defendants submit that the Court should exclude a large portion of the hours expended by plaintiff's counsel in litigating this matter which were clearly excessive, redundant, and otherwise unnecessary. One of the most glaringly excessive portions of the plaintiff's bill for attorneys' fees pertains to the approximately 30 hours spent on preparation of the joint pre-trial order ("JPTO") in this matter. In arguing in support of their requested billable rates, plaintiff's counsel tout their years of experience in the area of civil rights litigation. <u>See</u> Pl. Memo at pp. 6-8. Despite this claimed experience, these attorneys spent a collective 30 hours to prepare a very basic JPTO. The JPTO was a total of 6 pages. <u>See</u> **Exhibit A**, attached to Declaration of Ben Kuruvilla, dated October 20, 2014 ("Kuruvilla Declaration")[1]. The first page was simply a cover page that listed the caption of the case and names of trial counsel. <u>Id.</u> The second and third pages consisted merely of a recitation of plaintiff's claims and defendants' defenses in the action, which were pulled from the complaint and defendants' answer, and included a listing of plaintiff's witnesses – the same witnesses listed on plaintiff's initial disclosures. <u>Id.</u> The fourth page was defendants' list of form objections to plaintiff's witnesses and defendants' list of their two witnesses for trial. <u>Id.</u> The fifth page was plaintiff's list of her exhibits, which consisted of the basic police paperwork and plaintiff's medical records, all of which were produced at the outset of the case. <u>Id.</u> In fact, as is detailed below, very few pages of discovery were actually produced in this case. Plaintiff's exhibit list basically consisted of simply listing nearly every document produced by defendants in this case. The final page of

---

[1] All references to Exhibits are to the exhibits attached to the Kuruvilla Declaration.

the JPTO was defendants' list of their own exhibits for trial, to which plaintiff lodged form objections. Id.

It is difficult to fathom why attorneys of the "considerable" experience claimed by these counsel needed 30 hours to prepare plaintiff's portion of the JPTO. The claims in this case were basic to most civil rights lawsuit, false arrest and excessive force. There was one plaintiff and one individual defendant. The universe of documents and the file for this case was extremely limited. As such, defendants submit that this JPTO should have required no more that 2-3 hours, at most, but plaintiff's counsel billed more than ten times that amount.

## B. The Case Was Not Heavily Litigated

Although plaintiff's counsel argue that this case involved "more than two years of litigation, which included three depositions, multiple discovery requests, two amended complaints, and six court conferences", in reality, this case was not heavily litigated. Prior to the plaintiff's acceptance of defendants' Rule 68 Offer, there were a total of twenty-seven (27) entries on the Court's docket in the nearly two years this case was pending up that point. See Court's Docket, generally. There were two party depositions and one non-party deposition in this case. These three depositions, collectively, took about 6 ½ hours to complete. See Relevant pages showing depositions times for depositions of plaintiff, defendant Villalta and non-party Tyquan Williams, **Exhibit B**. Two of these depositions took 1 ½ hours each to complete. However, plaintiff's counsel have about 35 hours' worth of entries relating to these depositions, including preparation and reviewing of transcripts. See entries for September 4, 2012 -September 7, 2012, September 21, 2012, and January 25, 2013 – February 7, 2013.

More significantly, there was practically no discovery or substantive work completed in this case during all of 2013. The only work completed that year included one non-party

deposition (which was taken by defense counsel in 1 ½ hours), two brief court conferences, defendants' response to a second set of discovery demands (which included a grand total of 6 document requests and interrogatories that were narrowly focused on the issue of disciplinary discovery for the individual defendant), preparation of the JPTO and a site visit by plaintiff's counsel after the close of discovery and after submission of the JPTO.

A review of the Court's docket reflects a total of 11 entries for all of 2013. Of those 11 entries, 7 entries relate simply to the adjourning or scheduling of a status conference. One entry is a Notice of Appearance filed by Justin Dellecave for plaintiff on July 10, 2013, which is shortly before all discovery in this matter was completed. Another entry is for the filing of the JPTO. The other two entries are minute entries for conference before Judge Pollak. The parties filed the JPTO on September 27, 2013. There was no further activity on the docket until January 6, 2014, when the Court docketed a notice of pre-trial conference before Judge Eric Vitaliano, scheduled for January 28, 2014. Defendants served a Rule 68 Offer on January 22, 2014, which plaintiff accepted on January 27, 2014, one day before the pre-trial conference scheduled in front of Judge Vitaliano.

Moreover, this was not a document intensive case. Defendants produced a total of about 40 pages during this entire litigation. About 25 of those pages consisted of basic police paperwork associated with plaintiff's arrest processing, which involved about 24 hours in police custody, as well as the criminal court paperwork. Plaintiff's prosecution was not extensive because she accepted an Adjournment in Contemplation of Dismissal on the date of arrest. Accordingly, the criminal court paperwork consisted of 4 pages. The other 15 pages produced were plaintiff's school records which defendants subpoenaed and produced in September 2013 – at the conclusion of discovery in the case. Although neither party produced any medical records

to the other party in this case, both parties obtained medical records separately for plaintiff. Plaintiff's medical records consisted of a grand total of 28 pages and were not complex. Plaintiff's alleged injuries consisted of a contusion to her eye (not a fracture as indicated in plaintiff's motion), plus abrasions and scratches. No parties had the need to engage an expert witness in this case.

Plaintiff produced no documents in this case other than photographs of plaintiff (produced in June 2012) and photographs of the location of the incident (produced in November 2013). Plaintiff's disclosures in this case listed no relevant documents other than these photographs. Plaintiff and defendants each served a set of discovery demands in 2012. Plaintiff responded to defendants' demands by producing no documents and providing almost no substantive answers other than re-listing the names of witnesses already listed in plaintiff's initial disclosures and listing the names of hospitals where plaintiff sought treatment, which were already known. See Plaintiff's Response to Discovery Demands, **Exhibit C**. Defendants served no further discovery demands on plaintiff during the entire case.

In addition to the 17 documents produced as part of defendants' initial disclosures, defendants produced another 7 pages of documents when they responded to plaintiff's first set of discovery demands, which included the 4 pages of criminal court paperwork referenced above. See Defendants' Responses to Plaintiff's First Set of Discovery Demands, **Exhibit D**. Plaintiff served one further set of discovery demands in November 2012, which consisted of a total of 6 document requests and interrogatories that focused exclusively on any disciplinary records regarding the sole individual defendant in this case. Defendants responded to these requests by producing one additional page of discovery. See Defendants' Responses to Plaintiff's Second

Set of Discovery Demands, **Exhibit E.** Plaintiff made no further document requests during this entire litigation.

In fact, despite the claim that this case involved "multiple document requests" and was heavily litigated, a review of the bill reflects that more than 40% of the requested bill, or about 80 hours, includes work that was purportedly completed *after the close of discovery* in this case.[2] These 80 hours include the 30 hours spent on the JPTO, vague references to internal conferences and meetings with the client, a purported 8 hours devoted to "trial preparation" - before any trial date was set, before the JPTO was even finalized by the Court and before the parties even had a pre-trial conference before the trial judge or even had a schedule for preparing pre-trial submissions - and 33.75 hours devoted to the preparation of this motion for attorneys' fees. These entries are blatantly and grossly excessive and the Court should cut them significantly. The Court should also reduce the requested billing rates as a result of these excessive entries. See Discussion in Point I, supra.

### C. Any Excessive Hours Expended in This Case Were Solely Due to Plaintiff

In support of her motion, plaintiff argues that defendants "consistently failed to meet deadlines, failed to respond to discovery requests and refused to properly address settlement until after the JPTO was filed and date for trial set and, as a result, Mr. Peterson and Mr. Dellecave's work was necessary and imperative." See Pl. Memo at p. 9. First, plaintiff provides absolutely no support for these statements other than the incorrect assertions made in Mr. Peterson's own declaration attached to plaintiff's motion. More importantly, plaintiff fails to indicate how any of these alleged acts resulted in the generation of more hours or fees in this case.

---

[2] At a conference held on July 29, 2013, Magistrate Judge Cheryl Pollak ordered that plaintiff produce outstanding releases that plaintiff had previously failed to produce, but otherwise closed discovery and set dates for submission of the parties' JPTO. See Docket Entry No. 26.

Plaintiff's counsel's assertions are simply incorrect. Judge Vitaliano never set a date for trial in this matter as alleged by plaintiff. Plaintiff's statements about defendants refusing to address settlement in this case are completely inaccurate. Plaintiff alleges that defendants made a "lowball" offer of settlement at the initial conference. The reality is that, throughout the entirety of this litigation, plaintiff had demanded in excess of $100,000 to settle this matter. This was the position taken by plaintiff at conferences before the Court and in discussions with counsel. Plaintiff maintained that position in January 2014. As a result, defendants served a Rule 68 Offer of Judgment for $25,001 in January 2014, a number which was far below the $120,000 demand made by plaintiff. Nevertheless, plaintiff accepted this demand before the parties had to appear at a pre-trial conference before Judge Vitaliano. Plaintiff's settlement posture throughout this case, *i.e.,* demanding in excess of $100,000 throughout the litigation, but ultimately agreeing to a number far below on the eve of a final pre-trial conference, is what resulted in the case continuing to be litigated for two years.

### D. Specific Examples of Gross Overbilling

There are several categories of entries where counsel have either inflated their hours or simply billed a grossly excessive number of hours. As already described above, counsel spent about 30 hours preparing a simple, straightforward JPTO in this case. In addition, counsel spent 33.75 hours preparing this motion. See Entries for September 2014. Further, counsel devoted about 35 hours to the three depositions in this case, which collectively took 6 ½ hours to complete, two of which were taken by defense counsel. Accordingly, as just one example of the blatant overbilling engaged in by counsel in this case, for these tasks described above – i.e., preparation of the JPTO, preparation of this motion and preparing, appearing for and reviewing transcripts of 3 brief depositions – counsel billed over 100 hours. This type of billing should not

withstand scrutiny and should be cut down by the Court. Defendants submit that no reasonable paying client would pay for 100 hours of time billed to these tasks.

Further examples of the gross over-billing also exist. First, there are many examples of duplicate billing for the same tasks by Mr. Peterson and Mr. Dellecave. While plaintiff's counsel will likely attempt to argue that some of this time resulted from internal conferences, the end result is that these entries resulted in double billing for simple tasks. Defendants submit that no reasonable client would pay to staff this type of straightforward civil rights case with two attorneys of equal experience if the end result is just a number of double-billed entries. Below are some examples:

- On November 29, 2011, Mr. Peterson billed one hour for reviewing a draft of the complaint and speaking with Mr. Dellecave. On the same day, Mr. Dellecave billed the same amount for the same tasks.

- On April 17, 2012, Mr. Peterson billed 3 hours for reviewing discovery, preparing discovery demands, preparing the amended complaint and for speaking with Mr. Dellecave about discovery. On the same date, Mr. Dellecave billed 1 hour for speaking with Mr. Peterson about the case and for reviewing the same discovery and amended complaint.

- On June 11, 2012, Mr. Peterson billed 3 hours to review defendants' Notices of Deposition, Defendants' First Set of Discovery Demands, Defendants' Responses to Plaintiff's Demands, and a stipulation and to speak with Mr. Dellecave. On the next day, Mr. Dellecave billed 2 hours for similar tasks, including for speaking with Mr. Peterson. As a result, on June 11 and June 12, plaintiff's counsel spent a collective 5 hours for the simple task of just reviewing defendants' discovery and speaking with each other about it.

- On September 5, 2012, Mr. Peterson billed 7 hours to meet with and prepare plaintiff for her deposition, to meet with a non-party witness, to send some e-mails and to discuss the case with Mr. Dellecave. On the same date, Mr. Dellecave billed 3 hours for performing the same tasks, resulting in the two attorneys billing 10 hours in one day for these tasks.

- The next day, September 6, 2012, Mr. Peterson billed 8 hours to again prepare plaintiff for her deposition, to attend plaintiff's deposition (which began at 9:30 am and took 3 ½ hours to complete), to review defendants' supplemental

disclosures[3], to discuss the case with Mr. Dellecave and to prepare for the defendant's deposition. On the same date, Mr. Dellecave billed 2 hours to review the file and discuss the case with Mr. Peterson. Therefore, collectively, the two attorneys again spent 10 hours for the second consecutive day billing time to this case for similar tasks.

- On September 7, 2012, Mr. Peterson billed 6 hours to, once again, prepare for the defendant's deposition, to take the defendant's deposition (which began at 10:00 a.m. and lasted until 11:40 a.m.) and then to review two ECF bounces and discuss the deposition and next steps with Mr. Dellecave. On the same date, Mr. Dellecave billed 1 hour to discuss the case with Mr. Peterson, resulting in 7 hours billed collectively on this day and 27 hours billed collectively for the prior three days – all these hours related primarily to the taking of one party deposition and defending another.

While defense counsel acknowledges that the preparation for, and depositions of, the only two parties in the case were important tasks for this case, defendants submit that 27 hours devoted to these tasks is excessive – particularly for attorneys claiming to be highly experienced in civil rights litigation and where the universe of documents involved were limited to about 30-40 pages.

- On January 28, 2013, Mr. Peterson billed 3 hours to review the file, attend the deposition of a non-party (which deposition was taken by defense counsel and lasted 1 ½ hours) and then to discuss the case with Mr. Dellecave. On the same date, Mr. Dellecave billed 1 hour to discuss the case with Mr. Peterson.

- On August 6, 2013, Mr. Peterson billed 4 hours to review the file and begin preparation of the JPTO. On the same date, Mr. Dellecave also billed 4 hours for the same entries, resulting in a total of 8 hours billed to this task.

- On August 15, 2013, Mr. Peterson billed 4 hours to review the file, to continue preparation of the JPTO and speak with Mr. Dellecave. On the same date, there is another entry for 3 hours devoted to the same tasks,[4] resulting in a total of 7 hours billed to these tasks.

- On September 25, 2013, Mr. Peterson billed 2 hours to review an amended JPTO. On the same date, Mr. Dellecave billed 1 hour to this task and to discuss the case with Mr. Peterson.

---

[3] It is unclear from the file which supplemental disclosures plaintiff is referring to as none were prepared around this time and no supplemental disclosures were served by defendants until September 2013.

[4] While this entry indicates that it was made by Mr. Peterson, it appears this entry may have been for Mr. Dellecave.

- On January 6, 2014, prior to the setting of any trial date or schedule for pre-trial submissions, Mr. Peterson billed 4 hours to review the file, speak with plaintiff and discuss "trial strategy" with Mr. Dellecave. On the same date, Mr. Dellecave billed 4 hours to review the file and discuss "trial" with Mr. Peterson, resulting in 8 hours billed by both attorneys on that date.

Further, there are about 15 hours billed, not including preparation for depositions, involving discussions with plaintiff and other individuals. See June 8, 2011 (1 hour), June 22, 2011 (4 hours), June 23, 2011 (2 hours), June 29, 2011 (1 hour), September 15, 2011 (4 hours, including site visit), September 16, 2011 (1 hour), October 24, 2013 (4 hours, including site visit). The number of hours billed here appears excessive, and especially draws skepticism in light of the fact that it is impossible for defense counsel to verify these entries. Defense counsel's skepticism about these entries is also formed, in large part, by the bloated and excessive nature of many of the entries scattered throughout the bill as outlined above.

In addition, there are 9 hours billed to legal research regarding excessive force, false arrest and the preparation and filing of the complaint in this matter. See Entries for November 16, 2011, November 29, 2011, December 7, 2011, December 8, 2011, December 16, 2011, December 20, 2011. As noted, the complaint in this matter consisted of a simple fact pattern and the issues were non-complex. See Complaint, **Exhibit F** and Amended Complaint, **Exhibit G**. Plaintiff's counsel allege that they have "considerable" experience in the area of civil rights litigation. See Pl. Memo at p. 6-8. Therefore, it is unclear why experienced counsel billed 9 hours to the performance of these basic tasks. The only conclusion is that these billed amounts are excessive.

### E. An Across-the-Board Cut is Required.

As set forth *supra*, defendants submit that they have given sufficient examples that Mr. Peterson's and Mr. Dellecave's billing records are so grossly excessive that an across-

the-board percentage cut is appropriate. "Courts in this Circuit are permitted to reduce an excessive fee request by making an across-the-board percentage for redundant or otherwise unnecessary hours." Green v. City of New York, 403 Fed. Appx. 626, 630 (2d Cir. 2010) (allowing district courts to make across-the-board percentage cuts as a practical means in deciding fee applications); Carey, 711 F.2d 1146 (since "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application" courts may apply across the board percentage cuts); Builders Bank v. Rockaway Equities, LLC, No. 08 Civ. 3575 (MDG), 2011 U.S. Dist. LEXIS 107409, at *28-29 (E.D.N.Y. Sept. 23, 2011) (citing Kirsch, 148 F.3d at 173 (court should "deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application"); Manzo v. Sovereign Motor Cars, Ltd., No. 08 Civ. 1229 (JG) (SMG), 2010 U.S. Dist. LEXIS 46036, at *32 (E.D.N.Y. May 11, 2010) ("If the court determines that the number of hours expended was excessive, redundant or otherwise unnecessary, the court may make reductions to individual entries, or elect to account for such over-billing in an across-the-board percentage deduction.").

Moreover, this was not a complex case. The case consisted of one plaintiff with two primary claims: false arrest and excessive force. The case involved a single, brief incident and did not pose any novel or complex questions of law. Millea v. Metro-North R.R. Co., 658 F.3d 154, 167 (2d Cir. 2011) ("[T]he novelty and complexity of a case generally may not be used as a ground for [adjusting the lodestar] because they are already included in the lodestar calculation itself, being fully reflected in the number of billable hours recorded by counsel. Thus, while a district court may not adjust the lodestar based on these factors, it may use them to determine the reasonable number of hours the case requires. That is a permissible consideration and one that a trial judge is particularly well-situated to evaluate.") (citation and quotations omitted).

Accordingly, due to, amongst other things, the glaring and gross overbilling in their timekeeping, the lack of novel or complex issues in the case, and the excessive time spent on relatively straightforward tasks, defendants respectfully request that the Court reduce, across-the-board, the number of hours expended by counsel by at least 50-60 percent (50%-60%). Small v. New York City Transit Auth., 03 Civ. 2139 (SLT) (MDG), 2014 U.S. Dist. LEXIS 39582, at *42-43 (E.D.N.Y. Mar. 25, 2014) (reduced the number of hours billed by counsel by 60% because the Court had concerns about the accuracy of counsel's time records, which the Court found excessive).

### F. Counsel's Bill Should Be Reduced By Even More than in the Hassan Case

Finally, it should also be noted that, this is not the first time that Mr. Peterson and Mr. Dellecave have submitted a fee bill that with grossly excessive entries included. In Hassan, the law firm of PetersonDellecave LLP requested $74,673 in fees and costs, which included 184.2 hours of attorney time and 4 hours of paralegal time. The Court ultimately awarded $47,736.75, which represented a reduction of over 36% of the requested amount. Defendants submit that an even higher reduction is in order in this case. Although this case was pending for a longer period of time than Hassan before it was resolved by plaintiff's acceptance of a Rule 68, this case involved far less time and effort to litigate. As noted, there was hardly any substantive work completed in this case in 2013. Moreover, unlike in Hassan, there were no motions to compel discovery filed in this case. On the contrary, in this case, as noted there were only about 40 pages of documents produced by defendants, plaintiff only produced photographs and there were about 28 pages of medical records. No other documents were involved in this matter. In contrast, in Hassan, defendants produced well over 500 pages of documents and the case involved a Monell claim relating to an alleged claim of anti-Muslim bias by the NYPD. There

was no <u>Monell</u> claim alleged in this case and no discovery related to any NYPD training, policy or practice or otherwise related to any <u>Monell</u> claim was requested or produced in this case. The Court in <u>Hassan</u>, specifically noted that the presence of a <u>Monell</u> claim could increase the complexity of a case. <u>See</u>, <u>Hassan</u>, 2014 U.S. Dist. LEXIS 26194 at *14 ("In general, a <u>Monell</u> claim may increase the complexity of a civil rights case") <u>citing</u> <u>Raza v. City of N.Y.</u>, No. 13 Civ. 3448) (PKC) (JMA), 2013 U.S. Dist. LEXIS 166820 (E.D.N.Y. Nov. 22, 2013).

Morever, in <u>Hassan</u>, Mr. Peterson and Dellecave sought only 7 hours in relation to their application for "fees on fees" which the Court found was excessive and reduced to 3 hours. <u>Hassan</u>, 2014 U.S. Dist. LEXIS 26194 at *23-25. Here, the same counsel seek 33.75 hours in connection with a "fees on fees" request. This number should be reduced accordingly. Moreover, it was plaintiff's counsel's refusal to negotiate in good faith throughout the case (demanding in excess of $100,000 through the lawsuit and then accepting a $25,001 Rule 68 Offer after discovery completed and then refusing to negotiate at a settlement conference in July 2014 regarding plaintiff's fee application) which resulted in many of the hours now claimed in this case. In light of the foregoing, the Court should take at least a 50%-60% reduction on plaintiff's fees and costs.

## POINT III

### THE AMOUNT OF HOURS EXPENDED BY PLAINTIFF'S COUNSEL MUST BE REDUCED IN LIGHT OF THE LACK OF SUCCESS PLAINTIFF OBTAINED.

In light of the fact that plaintiff recovered only $25,001, despite demanding $1.5 million in her complaint and demanding settlement in excess of $100,000 throughout most of the litigation and up until service of the Rule 68 Offer, defendants submit that any request for attorneys' fees must be reduced accordingly.

There is no rule requiring proportionality between the amount of fees requested and the damages recovered. The Second Circuit has recently stated that:

> "[w]hile a court may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely. Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery. Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded."

Millea v. Metro-North R.R. Co., 658 F.3d 154, 169 (2d Cir. 2011) (citation omitted). The United States Supreme Court has opined, however, that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992) (citations omitted). The "degree of success" inquiry "is not limited to inquiring whether a plaintiff prevailed on individual claims." Barfield, 537 F.3d at 152 (citing Kassim v. City of Schenectady, 415 F.3d 246, 254 (2d Cir. 2005)). "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." Id. (quotation marks and citation omitted). "'If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith.'" Id. (quoting Hensley, 461 U.S. at 436). Accordingly, "a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory." Kassim, 415 F.3d at 256. Thus, the question in the instant matter is not whether the amount in attorneys' fees sought

by plaintiff's counsel should be reduced because it is disproportionately higher than what plaintiff himself was awarded, but rather, whether the amount of attorneys' fees sought by plaintiff's counsel is reasonable in light of the degree of success they obtained for the plaintiff.

Further, the degree of success plaintiff obtained is minimal in light of what was sought, and a request by plaintiff's counsel for an award of attorneys' fees in the amount of $67,099.10 is excessive and must be reduced. Farrar, 506 U.S., at 114-15 (1992). In sum, defendants respectfully submit that the amount of reasonable attorneys' fees awarded plaintiff's counsel must be reduced further in light of the minimal degree of success obtained by the plaintiff in this action.

## POINT IV

### FEES IN CONNECTION WITH THE INSTANT APPLICATION SHOULD NOT BE AWARDED.

In one of the most blatant examples of overbilling by counsel here, plaintiff's counsel billed 33.75 hours, or $11,312, for the preparation of this motion. For several reasons, the Court should not award plaintiff any fees whatsoever for the preparation of this motion, or, alternatively, these fees should be significantly reduced. In seeking to recover the time spent on this application, plaintiff is seeking to recover "fees on fees." See Hassan v. New York City, No. 11-CV-5382 (JBW) (VMS), 2014 U.S. Dist. LEXIS 26194 (E.D.N.Y. Feb. 10, 2014); Mawere v. Citco Fund Services, 09 Civ. 1342 (BSJ) (DF), 2011 U.S. Dist. LEXIS 149111 at *23-24 (S.D.N.Y. Sept. 16, 2011); See Long v. City of New York, No. 09 Civ. 699 (AKH), 2010 U.S. Dist. LEXIS 81020, at * 5 (S.D.N.Y. August 6, 2010).

The Rule 68 Offer made in this case, which plaintiff agreed to by accepting the offer, specifically stated that City was offering to allow plaintiff to take a judgment against the City of New York in this action for the total sum of Twenty-Five Thousand and One

($25,001.00) Dollars, plus reasonable attorneys' fees, expenses, and costs *to the date of this offer* for plaintiff's federal claims. See Rule 68 Offer, Exhibit D to Declaration of Duncan Peterson, dated September 22, 2014. Accordingly, the agreed to language would not include any fees incurred following the date the Rule 68 Offer was served, which, in this case, was January 22, 2014. Accordingly, the time billed on this application, all of which occurred in September 2014, should not be recoverable under the plain language of the Rule 68 offer.

While some courts in this Circuit do not award fees incurred after the acceptance of an offer of judgment, see Long, 2010 U.S. Dist. LEXIS 81020, at *5 (S.D.N.Y. Aug. 6, 2010) ("The Rule 68 judgment limited recoverable fees and expenses to those incurred prior to the date of the offer."), other courts allow such fee awards, when reasonable, see Rosado v. City of New York, No. 11 Civ. 4285 (SAS), 2012 U.S. Dist. LEXIS 35249 (S.D.N.Y. Mar. 15, 2012). The district court has "great leeway" in determining whether such fees should be awarded. Gagne v. Maher, 594 F.3d 336, 344 (2d Cir. 1979). The Second Circuit has stated that, "if the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. Dist., 71 F.3d 1053, 1059 (2d Cir. 1995) (citing Gagne, 594 F.2d 336 (2d Cir. 1979), aff'd on other grounds, 448 U.S. 122 (1980); Mawere v. Citco Fund Services, 2011 U.S. Dist. LEXIS 149111 at *23-24 (the Court has discretion to "deny or substantially reduce" a so-called request for "fees on fees" where the amount requested is excessive).

As explained in detail in Points I – III *supra*, plaintiff's fee request was excessive in terms of requested hourly rate and the amount of time spent litigating this matter. Moreover, plaintiff's request for $11,312 in fees - over 33 hours - associated with her having to make the present application is exorbitant. Plaintiff's counsel spent more hours on their fee application –

33.75 hours – than they did on almost any other task completed in this case. The fee application took just about as much time as it did for plaintiff's counsel to prepare for, appear at and later to discuss and to analyze all three depositions in this matter. As detailed above, there was hardly any paper discovery exchanged in this action, with defendants producing only about 40 pages of documents in the case. In light of the lightly litigated nature of this case, and the now disproportionate amount of time spent on preparing this fee application, the Court should use its discretion to completely deny or substantially reduce the exorbitant hours claimed here.

Rewarding plaintiff's counsel the amount they seek for the instant motion practice would create a perverse incentive. Had plaintiff's counsel requested reasonable attorneys' fees, the parties would not have been forced to expend time and resources litigating this matter. However, due to counsel's unreasonable demand, defendant has no choice but to oppose plaintiff's application as plaintiff's counsel requested an exorbitant amount without any colorable basis for doing so. Thus, should plaintiff's counsel then be awarded fees for the instant application, it would simply encourage counsel in the future to request an amount they know the other side will not pay solely to force motion practice and increase the total amount of fees they obtain as a result of the litigation.

Even if the Court is inclined to award plaintiff fees for the time spent drafting the present motion, defendants respectfully submit that plaintiff's requested amount is far too high and should be reduced significantly. In fact, in the Hassan case, which also involved Mr. Peterson and Mr. Dellecave's requests for fees, the Court found that the 7 hours spent in that case by Mr. Peterson in preparing his application for fees should be reduced to 3 hours. Specifically, the Court noted that given that plaintiff's application involved recounting specifics about the history of the litigation, which were facts about which Mr. Peterson should have been

intimately familiar, his 7 hours spent on preparing the fee application in that case were excessive and needed to reduced. The same logic applies here. The parties attended a conference to resolve fees before Judge Pollak on July 29, 2014. Even though plaintiff specifically requested a conference with Judge Pollak to resolve the fees issue (see Docket Entry No. 31), plaintiff's counsel refused to negotiate at all during the conference, resulting in the Court's issuing a schedule for submission of plaintiff's fee application. Plaintiff's counsel then spent over 33 hours in September preparing the instant application, which was excessive. To the extent plaintiff's counsel argues that these exorbitant hours were required to prepare the Declaration of Duncan Peterson, submitted in support of plaintiff's motion, defendants submit that this declaration is simply a list of counsel's biographical information and a listing of the procedural history in this case. As noted by Judge Scanlon in the Hassan decision, plaintiff's counsel should be intimately familiar with these facts and preparation of that document should not take anywhere near 33 hours of billed time. Instead, that document should have been prepared in 1-2 hours. In light of the above, the Court should use its discretion to completely deny plaintiff's entire request for "fees on fees". Alternatively, the Court should significantly reduce this request in light of the excessive and disproportionate number of hours spent on the application.

Accordingly, in light of all the foregoing, defendants request that the Court award plaintiff no more than $30,000 in fees and costs in this case.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court: 1) reduce Mr. Peterson's and Mr. Dellecave's hourly rates to $300 per hour; 2) reduce across-the-board the hours expended by counsel by at least 50%-60%; 3) deny or significantly reduce counsel's request for fees in connection with the instant application and (4) award no more than $30,000 in fees and costs to plaintiff.

Dated:      New York, New York
                October 20, 2014

                         ZACHARY W. CARTER
                         Corporation Counsel of the City of New York
                         Attorney for Defendants City and Villalta
                         100 Church Street
                         New York, New York 10007
                         (212) 356-3513
                         bkuruvil@law.nyc.gov


                  By:     _____/s/_____
                         Ben Kuruvilla
                         Senior Counsel